ANNA WILLIAMS, Judgment Creditor, Plaintiff, *v.* ALBERT E. C. SMITH, Judgment Debtor, Defendant.

City Court of New York, New York County, April 10, 1939.

*Irving Rubin,* for the plaintiff.

*Albert E. C. Smith, in pro per.*

MADIGAN, J.   This is an application for a body execution.

The judgment was obtained by default.  Defendant did not appear in the action.  He says he was too poor to engage a lawyer.

There is no suggestion of willful, wanton or malicious conduct or injury.  Plaintiff alleged that she was hurt as a result of an accident in a building, that she fell upon a defective step.  Apparently defendant had title to the property.

There are averments, of a conclusory character, to the effect that the judgment debtor has been offensive and contemptuous. It is also shown that three dollars and twenty-one cents was collected from a bank account.

It is further averred that during an examination in supplementary proceedings respondent testified that he had forty dollars a month from rents after paying all expenses.  However, the mortgagee, a bank, is now collecting all the rents.

Respondent asserts that he has no other property.  In fact he is on relief.

He became seventy-five years of age in November, 1938.

Plaintiff contends that the court must direct the body execution to issue and she cites several decisions in her favor.

It is not believed that the court is without discretion in the matter.

Section 764 of the Civil Practice Act, formerly section 1487 of the Code of Civil Procedure, revised from the Code of Procedure, section 288, seems to have been unchanged from 1879 until the amendment of 1936.  Prior to that amendment it was not necessary to apply to the court for a body execution.  Now it is, as a result of the amendment.

Section 764 of the Civil Practice Act (as amd. in 1936, chap. 279) provides in part that the applicant shall set forth " in detail the right of the party to the execution, the amount of the judgment, the amount unpaid, the time when and place where the execution against his personal property has been returned wholly or partially unsatisfied, and such other matters as the judge, justice or court issuing the same may require."

It would not be proper to disregard the words " such other matters as the judge, justice or court issuing the same may require."

However, they are not referred to in any decision cited by the plaintiff.

As a result of the inclusion of those words in section 764 of the Civil Practice Act, it has been necessary, since the amendment of 1936, to furnish information in relation to " such other matters " so far as required by the court. This is in addition to the jurisdictional essentials which are referred to in the statute, section 764 of the Civil Practice Act. Evidently the words " such other matters as the judge, justice or court issuing the same may require " do not apply to jurisdictional prerequisites. They do apply to something. They are not to be regarded as surplusage. They indicate that beyond the jurisdictional requirements the court may require the disclosure of other matters. This power implies a duty. It is a duty to inquire and decide as to whether, despite the showing of the facts necessary to confer jurisdiction, the application should be denied in the exercise of a sound discretion.

Apparently one purpose of the amendment of 1936 was to afford relief against inhumanity such as is suggested by the present application. No proper end would be served by imprisoning, for a period of six months or for any period, this aged man, who is now a public charge and, notwithstanding the vehement protestations of the judgment creditor, without visible means of paying the judgment.

That judgment against this debtor was not for a willful tort, for any wrong involving delinquency or for any act for which punitive damages could have been awarded. It is based upon a mishap, and cannot be realistically regarded as representing anything more than a judgment for debt. No one contends that the judgment debtor should escape payment of the judgment, if he can pay it, but the judgment creditor has not shown the court how, from what source, where the judgment debtor could find means to satisfy it with money. It is clear that the judgment debtor cannot do so. If he could pay a judgment of $789.30 the authorities would not be giving him home relief.

The amendment of 1936 to section 764 of the Civil Practice Act deprived judgment creditors of the arbitrary power to issue, through their attorneys, body executions. It is not believed that the sole purpose of the amendment was to impose upon the judges the ministerial duty of seeing to it that the formal statutory prerequisites for issuing body executions have been complied with. That duty could have been left where it had rested for so many years, with the attorney for the judgment creditor. An error by the attorney might result in an action for false imprisonment, affording protection against abuse of the attorney's right to issue a body execution upon com-

pliance with formal legal requirements. The amendment of 1936 gave the court the power and opportunity to inquire into all the circumstances so that it might be determined, without the animus which may affect a litigant, whether any good end could be achieved by incarcerating the judgment debtor. Doubtless, as time goes on, a line of decisions will develop to guide the courts in the exercise of such judicial discretion. The cases will establish principles making it clearer than it is at present when a body execution should be allowed and when, in the exercise of a sound judicial discretion, permission to issue such an execution should be withheld.

Concerning the case at hand the court is free from doubt. The nature of the occurrence upon which the claim is founded, the judgment debtor's age and impoverishment, in combination, are circumstances which make it more than inadvisable to allow the body execution to issue.

The application is denied.

Order signed.